UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 08 CR 57-1 |
| | ) | |
| KENNETH ZIGAS, | ) | Judge Charles R. Norgle, Sr. |
| Defendant. | ) | |

**DEFENDANT KENNETH ZIGAS' SENTENCING MEMORANDUM**

Now comes Defendant **KENNETH ZIGAS**, by and through his attorney **PATRICK E. BOYLE**, and files with this Honorable Court, Kenneth Zigas' Sentencing Memorandum.

I. Sentencing Post-Booker

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court made the Sentencing Guidelines effectively advisory. As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges, . . . , but it permits the court to tailor the sentence in light of other statutory concerns as well . . ." Booker, 125 S. Ct. At 756-57. The Guidelines calculations are to be treated "as just one of a number of sentencing factors." United States v. Ranum, 353 F.Supp.2d 984, 985-87 (E.D.Wis.2005). The Ranum court rejected the notion that the Guidelines must be afforded heavy weight and concluded that "courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the Section 3553(a) factors." Ranum, 353 F.Supp.2d at 987-89. Finally, and most importantly, Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary . . ."

II. Who is Kenneth Zigas?

Defendant Kenneth Zigas is a still a young man – he is now 26-years-old. However, he was even younger at the time he committed the charged offense. He was only 22-years-old when he made the mistake of agreeing to sell an undercover agent cocaine and a handgun back in 2003. This terrible decision by Mr. Zigas can be attributed to a great extent by Mr. Zigas' youth and difficult childhood. As is reflected in the PSR, Mr. Zigas grew up in a home marked by domestic violence. His father was physically abusive to his mother which led to his parents' separation. (PSR at lines 175-76) Mr. Zigas' mother then later entered into a relationship with a gang member Daniel Velasquez who eventually moved into the Zigas' household. (PSR at lines 177-182) Consequently, from an early age, Mr. Zigas was only exposed to negative male role models and lived in an unstable home. This undoubtably led to Mr. Zigas' youthful experimentation with drugs and subsequent marijuana usage. (PSR at lines 243-247) Because of this environment, Mr. Zigas chose to leave home at 18 and found himself homeless on several occasions. (PSR at lines 190-93)

As an adult, Mr. Zigas tried to make a decent life for himself. About five years ago, Mr. Zigas began a relationship with Veronica Matuszweski and they are still together. Ms. Matuszweski lived with Mr. Zigas up to the time of his arrest. They both worked and were raising twin newborns and Ms. Matuszweski's daughter from an earlier relationship. (PSR at lines 194-207) Mr. Zigas' acknowledges that his decision to engage in criminal conduct was a horrible decision that has led to his separation from his girlfriend and children. His greatest regret is the impact that his incarceration will have on the twins and he has given his mother custody of them acknowledging his inability to support and care for them. (PSR at lines 198-202)

III. Kenneth Zigas' Offense Conduct

Following his arrest, Mr. Zigas gave a full statement to the investigating officers where he made a full disclosure of his participation and role in the offense. Following his indictment, Mr. Zigas accepted full responsibility and entered a timely, truthful guilty plea. Mr. Zigas acknowledges the facts of his conduct as set forth in the government's version of offense, specifically that he sold an undercover agent two ounces of crack cocaine and a firearm. However, Mr. Zigas does ask this Court to consider several factors in mitigation. First of all, prior to being approached by an informant and the undercover government agent, Mr. Zigas was not a dealer in narcotics. Mr. Zigas was only a marijuana user and this usage did bring him into contact with others who were selling narcotics. Mr. Zigas did not solicit the drug sales in this case but they were instead requested by the informant who introduced Mr. Zigas to the undercover agent. (PSR at lines 46-48) It was the informant and agent who requested crack cocaine and the quantity of one ounce. Because Mr. Zigas was not a dealer himself he had to obtain the requested drugs from another subject who then accompanied Mr. Zigas to the drug sale. It was this subject who made the majority of the profit from the sale, with Mr. Zigas making $200 for being essentially the "delivery boy."

The second drug transaction followed this same pattern. Another ounce of crack cocaine was requested by the informant and undercover agent and Mr. Zigas sold it to them. (PSR at lines 50 to 55) However, as part of this second transaction, they also requested a firearm which Mr. Zigas did obtain and sell for $200. (PSR at lines 50-53). Most significantly, the gun was only present at the second transaction because it was to be sold to the ATF agent at his own request and it was unloaded. The informant later attempted to get Mr. Zigas to make another drug sale but Mr. Zigas refused. (PSR at lines 54-55) As is stated in the PSR, these transactions

were the only times that Mr. Zigas had possessed or sold crack cocaine or a firearm and that he acknowledges that it was a big mistake and that he wishes he had never committed this offense. (PSR at lines 59-62)

The Defendant, while accepting full responsibility for his actions, asks that this Court not increase his offense level by the additional 2 points for the possession of a dangerous weapon during a narcotics transaction.  Mr. Zigas acknowledges that the Sentencing Guidelines provide that, for certain offenses involving drugs, the Court could increase the base offense level by two levels if a dangerous weapon, including a firearm, was possessed.  U.S.S.G. Section 2D1.1(b)(1); United States v. Wetwattana, 94 F.3d 280, 283 (7th Cir.1996) Application Note 3 to that section explains that the "enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment should be applied if the weapon was present, unless it was clearly improbable that the weapon was connected to the offense."  As an example of an occasion where the enhancement would not apply, the Application Notes describe an arrest of a defendant at his residence, where the police find an unloaded hunting rifle in the closet.  Unites States v. Cain, 155 F.3d 840, 843 (7th Cir.1998).  Mr. Zigas submits that this is clearly another occasion where the enhancement should not apply.  First of all, as a clear factual matter the weapon possessed here was not *dangerous* as Section 2D1.1.(b)(1) requires as it was not loaded.  Further, the weapon was only possessed and present during the drug transaction because it's presence was requested by the government informant and agent.  The gun was not there to threaten the agents but only as another object of commerce as requested by the agents. Consequently, Mr. Zigas asks this Court not to enhance his offense level by the two levels.

IV. Guidelines Calculations

Therefore, Mr. Zigas asks this court to consider the evidence and the relevant law and

conclude that his Advisory Sentencing Guideline calculation is as follows:

(1) Pursuant to Section 2D1.1(c)(6) the base offense level is 28 because the offense involved 44.6 grams of crack cocaine. (The same amount of powder cocaine would be a level 14)

(2) Mr. Zigas has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the defendant continues to accept responsibility within the meaning of Section3E1.1, a 2 level reduction would be appropriate.

(3) Mr. Zigas has assisted authorities in the prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial. An additional 1 level reduction is therefore appropriate pursuant to Section 3E1.1(b).

(4) In his written plea agreement, the parties had agreed that Mr. Zigas had a criminal history of category I. However, in the PSR, Mr. Zigas has been placed in criminal history category II because of a total of three criminal history points. While Mr. Zigas does not dispute the accuracy of the PSR's recitation of his criminal history or its application of the Sentencing Table, Mr. Zigas does ask this Court to sentence him as a category I for several reasons. First of all, under Section 4A1.3(b), this Court can make a one category departure if it feels that the defendant's criminal history overstates the seriousness of past criminal conduct. Mr. Zigas recognizes that he has one prior felony conviction for the possession of cannabis. This is a serious offense and it results in one point which would keep Mr. Zigas in category I. However, the other two offense that add points and put Mr. Zigas into category II were both misdemeanors. One was a retail theft which the defendant received 2 days of jail or "time considered served"

5

after pleading guilty on his first day in court. Essentially, Mr. Zigas was brought into court, the judge asked him if he wanted to plead guilty for the time he had already served and Mr. Zigas agreed. The other offense was a misdemeanor possession of cannabis which Mr. Zigas received supervision for. Again, Mr. Zigas, on his first day in court following his arrest, accepted, without counsel, the State's offer of supervision (a non-conviction under state law) for his guilty plea.

Another factor which argues for the Court sentencing Mr. Zigas as a category I is the fact that all of the conduct that gives Mr. Zigas his criminal history points occurred long after his criminal conduct here. The criminal conduct in this case occurred back in October and November 2003. Mr. Zigas was not indicted for this conduct until January 24, 2008 almost 5 years later. As the PSR notes, there has been no reason for this delay given. (PSR at lines 56-58) If Mr. Zigas had been promptly indicted, he would have been sentenced prior to any of these other offenses. Consequently, Mr. Zigas asks this Court to give him the benefit of his written plea agreement and in fairness sentence him as a category I.

Consequently, the Defendant asks this Court to conclude that the appropriate offense level is 25 (with the 3 level off for early acceptance of responsibility). A level 25 with a criminal history category of I results in a guideline range of 57-71 months.

V. U.S.S.G. Section 3553(a) Factors and potential Mitigation

While accepting full responsibility for his actions, Mr. Zigas asks this Court to consider several factors which could lead to a downward departure of his sentence. First, there is the disparity between the guidelines treatment of crack and powder cocaine. As stated above, here there is a total quantity of 44.6 grams of crack cocaine which makes the offense a level 28.

However, the same amount of powder cocaine would only be a level 14 (at category I a recommended sentence of 15-21 months). Further, while Mr. Zigas is not denying his criminal culpability in his conduct or asserting entrapment it cannot be ignored that it was the government informant who initiated this conduct. Prior to being approached by the informant, Mr. Zigas had never dealt narcotics nor had he even possessed crack cocaine. It was the informant and agents who requested that the narcotic be crack cocaine and that the transaction amounts be at least one ounce and that the second transaction involve a firearm.

     Finally, Mr. Zigas asks that this Court consider his difficult childhood which inevitably lead to his susceptibility to engage in this criminal conduct and to consider his lack of prior criminal history when he engaged in it back in 2003. Mr. Zigas has certainly learned his lesson, accepted responsibility, made the best of his situation (he participated and successfully completed an anger management class at the M.C.C.) and can still be an asset to his family and society after he serves his sentence.

     WHEREFORE, Defendant KENNETH ZIGAS respectfully requests that this Court exercise its discretion, consider all of the relevant factors of 18 U.S.C. Section 3553(a), and sentence Mr. Zigas to a reasonable sentence.

                                                Respectfully submitted,

                                                **KENNETH ZIGAS**

                              By:    s/ Patrick E. Boyle
                                      By his attorney Patrick E. Boyle

Law Offices of Patrick E. Boyle
**PATRICK E. BOYLE**
155 N. Michigan Ave., Suite 562
Chicago, IL 60601
(312) 565-2888

**CERTIFICATE OF SERVICE**

      The undersigned Attorney certifies that the attached Sentencing Memorandum was served on **Friday, July 18, 2008**, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                                      By:    s/ Patrick E. Boyle
                                                                   PATRICK E. BOYLE

Law Offices of Patrick E. Boyle
**PATRICK E. BOYLE**
155 N. Michigan Ave., Suite 562
Chicago, IL 60601
(312) 565-2888