UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 57 |
| | ) | Judge Charles R. Norgle |
| KENNETH ZIGAS | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT
KENNETH ZIGAS'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the following response to Defendant's Sentencing Memorandum.

**I.   Defendant Initiated The Criminal Relationship With The Confidential Informant And The Undercover Agents.**

In his sentencing memorandum, defendant suggests that the criminal conduct to which he pled guilty was an anomaly and was initiated by the government. Both suggestions are false. Prior to the two drug transactions at issue in Counts One and Two of the indictment, defendant initiated contact with the confidential informant ("CI"). In particular, on September 10, 2003, the CI contacted agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") and reported that defendant had offered to sell him four stolen firearms. According to the CI, defendant told the CI that he could supply stolen firearms previously used in criminal activity. After bringing this information to ATF, the CI agreed to arrange a transaction between ATF undercover agents and defendant for the sale of four firearms, which occurred on September 10, 2003 at the CI's apartment in Hickory Hills. According to the CI, defendant had stolen the four firearms in question.

Then on October 21, 2003, Zigas set up a gun deal between his mother's boyfriend, Daniel Velasquez,[1] and the same undercover ATF agents. Defendant accompanied Velasquez to the deal,

---

[1] Velasquez pled guilty in a separate case, *United States v. Velasquez*, No. 08 CR 58 (Darrah, J.).

which occurred at the CI's apartment in Hickory Hills, where Velasquez sold a gun and ammunition to the ATF undercover agents. Thus, Defendant's suggestion that the November 12, 2003 gun transaction was the "only time" he possessed or sold a gun is just plain wrong.

It is also significant to point out the cover used by the ATF agents. The ATF agents told defendant that they collected illegal gambling debts on behalf of an organized-crime operation. Thus, defendant understood that he was putting guns in the hands of people who would use them.

## II.  Section 2D1.1(b)(1)'s Enhancement Clearly Applies Here.

Defendant admits that a gun was present at the November 12, 2003 crack deal and acknowledges that the two-point enhancement "should be applied if [a] weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3. Nevertheless, defendant requests that this Court decline to apply Section 2D1.1(b)(1)'s two-point enhancement for two reasons. First, defendant points out that the gun was not loaded. While true, that does not take defendant's conduct outside the scope of Section 2D1.1(b)(1). See *United States v. Wiley*, 997 F.2d 378, 386 (8th Cir. 1993) (upholding application of 2D1.1(b)(1), despite fact that gun was unloaded); *United States v. Paulk*, 917 F.2d 879, 882 (5 th Cir. 1990) (same, despite fact that gun was unloaded and inoperable). Case law under 18 U.S.C. § 924(c) is in accord. *See, e.g., United States v. Kirvan*, 997 F.2d 963, 966 (1st Cir.1993) ("It is common ground that the gun need not be proved to be loaded or operable in order to convict."); *United States v. Hunter*, 101 F.3d 82, 85 (9th Cir.1996) ("Congress intended the ten-year penalty to apply to unloaded and inoperable semiautomatic weapons as well."); *United States v. Coburn*, 876 F.2d 372, 375 (5th

Cir.1989) ("The fact that a firearm is 'unloaded' or 'inoperable' does not insulate the defendant from the reach of section 924(c).").

Defendant's second argument is that because the gun was an "object of commerce" Section 2D1.1(b)(1) does not apply. As an initial matter, the gun was certainly not an item of commerce prior to the time defendant arrived at the drug transaction. For example, if someone had attempted a rip while defendant traveled to Hickory Hills with the crack in his possession, the gun (although unloaded) was accessible for defendant to protect both his person and the drugs. Section 2D1.1(b)(1) is directed at that precise danger.

Further, the fact that the gun was used as an item of commerce does not negate the fact that it was "connected to the offense." U.S.S.G. 2D1.1, Application Note 3. Here again, case law under 18 U.S.C. 924(c) is instructive. For example, in *United States v. Timmons*, 283 F.3d 1246 (11th Cir. 2002), the Eleventh Circuit upheld defendant's conviction under 924(c) on facts strikingly similar to the present case:

> In this case, the evidence demonstrates that the gun was not there "coincidentally," nor was "entirely unrelated" to the drug crime. If the gun did not facilitate the drug offense, it certainly had the "potential of facilitating" the drug offense. The evidence revealed that on the morning of October 23, 1998, the undercover officers and Timmons finalized the negotiations for the gun by determining that it was still available and that Timmons would sell it that day, and then proceeded to arrange for the sale of $200 worth of crack cocaine. Timmons brought the gun and the drugs together to the officers in a shoe-box. If indeed the purpose of the statute is to combat the dangerous combination of drugs and guns, as [the Supreme Court in] *Muscarello* held, and Timmons combined the drugs and gun in a single shoe-box in what essentially amounts to a single transaction, as the jury found, *it would flout the purpose of the statute to hold anything but that the gun was carried "during and in relation" to the drug offense*.

*Id.* at 1251-52 (emphasis added); see also *United States v. Lipford*, 203 F.3d 259 (4th Cir. 2000).

For all these reasons, Section 2D1.1 applies here.

### III.　Defendant's Criminal History Does Not Substantially Over-Represent The Serious Of Defendant's Criminal History.

Defendant's final argument is that this Court should ignore two prior convictions in calculating his criminal history in this case. While, as defendant points out, both convictions were misdemeanors, Section 4A1.2(c) expressly provides that "sentences for misdemeanor and petty offenses are counted," except for the express exclusions set forth in that provision. Defendant's second argument is that "all of the conduct that gives Mr. Zigas his criminal history points occurred long after his criminal conduct here." That actually weighs against defendant's request for a downward departure. Rather than mend his ways following the crack and gun deals back in 2003, defendant has continued to engage in criminal activity. In short, this case falls far outside the heartland of cases envisioned under Section 4A1.2(c). U.S.S.G. § 4A1.2(c), Application Note 3 (noting as an example a case where "the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period").

## CONCLUSION

Based on the above, the government respectfully requests that this Court adopt the Guidelines calculations in the PSR, total offense level 27 and criminal history category II, and sentence defendant within the resulting range of 78-97 months.

                          Respectfully submitted,

                          PATRICK J. FITZGERALD
                          United States Attorney

                     By:  /s/ J. Gregory Deis
                          **J. GREGORY DEIS**
                          Assistant United States Attorney
                          219 S. Dearborn Street, 5th Floor
                          Chicago, IL  60604

4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 57 |
| | ) | Judge Charles R. Norgle |
| KENNETH ZIGAS | ) | |

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that **GOVERNMENT'S RESPONSE TO DEFENDANT KENNETH ZIGAS'S SENTENCING MEMORANDUM** was served on **July 18, 2008**, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

          Respectfully submitted,
          PATRICK J. FITZGERALD
          United States Attorney

By:  /s/ J. Gregory Deis
      **J. GREGORY DEIS**
      Assistant United States Attorney
      219 S. Dearborn Street, 5th Floor
      Chicago, IL  60604